

*Broadcast Music Inc, 10 Music Sq E, Nashville, TN, 37203-4321*

Date:   **November 02, 2019**

**Denise Marie Jones**
**73 Knox Ave**
**Pittsburgh, PA 15210-5505**
**UNITED STATES**

Dear  **Denise Marie Jones,**

   The following shall constitute the agreement between us:

   1.  As used in this agreement:

      (a) The word "Period" shall mean the term from **April 01, 2019** to **December 31, 2021** and continuing thereafter for additional terms of two (2) years each unless terminated by either party at the end of said initial term or any additional term, upon notice sent by registered, certified or Express mail, or other sending method that requires that the date that the item is sent be recorded by the courier (e.g., overnight mail or messenger service), not more than six (6) months or less than three (3) months prior to the end of any such term.

      (b) The words "Work" or "Works" shall mean:

         (i) All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) composed by you alone or with one or more co-writers during the Period; and

         (ii) All musical compositions (including the musical segments and individual compositions written for a dramatic or dramatico-musical work) composed by you alone or with one or more co-writers prior to the Period, except those in which there is an outstanding grant of the right of public performance to a person other than a publisher affiliated with BMI.

   2.  You agree that:

      (a)  Within ten (10) days after the execution of this agreement you will furnish to us a completed work registration form available in blank from us with respect to each Work heretofore composed by you which has been published in printed copies or recorded commercially or synchronized commercially with film or tape or which is being currently performed or which you consider as likely to be performed.

      (b)  In each instance that a Work for which a work registration form has not been submitted to us pursuant to subparagraph 2(a) is published in printed copies or recorded commercially or in synchronization with film or tape or is considered by you as likely to be performed, whether such Work is composed prior to the execution of this agreement or hereafter during the Period, you will promptly furnish to us a completed work registration form with respect to each such Work.

      (c)  If requested by us in writing, you will promptly furnish to us (i) a legible lead sheet or other written or printed copy of a Work, (ii) if such Work has been or shall be synchronized with or otherwise used in connection with a motion picture or television film or tape, a cue sheet showing the title, writers, publishers and nature and duration of the use of the Work in such film or tape, (iii) a copy of a commercial recording of the Work and (iv) a copy of your agreement with the publisher of the Work.

3. The submission of each work registration form pursuant to paragraph 2 shall constitute a warranty and representation by you that all of the information contained thereon is true and correct and that no performing rights in such Work have been granted to or reserved by others except as specifically set forth therein in connection with Works heretofore written or cowritten by you.

4. Except as otherwise provided herein, you hereby grant to us for the Period:

(a) All the rights that you own or acquire publicly to perform, and to license others to perform, anywhere in the world, in any and all places and in any and all media, now known or which hereafter may be developed, any part or all of the Works.

(b) The nonexclusive right to record, and to license others to record, any part or all of any of the Works on electrical transcriptions, wire, tape, film or otherwise, but only for the purpose of performing such Work publicly by means of radio and television or for archive or audition purposes. This right does not include recording for the purpose of sale to the public or for the purpose of synchronization (i) with motion pictures intended primarily for theatrical exhibition or (ii) with programs distributed by means of syndication to broadcasting stations, cable systems or other similar distribution outlets.

(c) The nonexclusive right to adapt or arrange any part or all of any of the Works for performance purposes, and to license others to do so.

5. Notwithstanding the provisions of subparagraph 4(a):

(a) The rights granted to us by subparagraph 4(a) shall not include the right to perform or license the performance of more than one song or aria from a dramatic or dramaticomusical work which is an opera, operetta or musical show or more than five (5) minutes from a dramatic or dramaticomusical work which is a ballet, if such performance is accompanied by the dramatic action, costumes or scenery of that dramatic or dramaticomusical work.

(b) You, together with all the publishers and your cowriters, if any, shall have the right jointly, by written notice to us, to exclude from the grant made by subparagraph 4(a) performances of Works comprising more than thirty (30) minutes of a dramatic or dramaticomusical work, but this right shall not apply to such performances from (i) a score originally written for or performed as part of a theatrical or television film, (ii) a score originally written for or performed as part of a radio or television program, or (iii) the original cast, soundtrack or similar album of a dramatic or dramaticomusical work.

(c) You, the publishers and/or your cowriters, if any, retain the right to issue nonexclusive licenses for performances of a Work or Works in the United States, its territories and possessions (other than to another performing rights licensing organization), provided that within ten (10) days of the issuance of such license or within three (3) months of the performance of the Work or Works so licensed, whichever is earlier, we are given written notice thereof and a copy of the license is supplied to us.

6. (a) As full consideration for all rights granted to us hereunder and as security therefor, we agree to pay to you, with respect to each of the Works in which we obtain and retain performing rights during the Period:

(i) For radio and television performances of a Work in the United States, its territories and possessions, amounts calculated pursuant to our then current standard practices upon the basis of the then current performance rates generally paid by us to our affiliated writers for similar performances of similar compositions. The number of performances for which you shall be entitled to payment shall be estimated by us in accordance with our then current system of computing the number of such performances.

You acknowledge that we license performances of the Works of our affiliates by means other than on radio and television, but that unless and until such time as methods are adopted for tabulation of such performances, payment will be based solely on performances in those media and locations then currently surveyed. In the event that during the

Period we shall establish a system of separate payment for performances by means other than radio and television, we shall pay you upon the basis of the then current performance rates generally paid by us to our other affiliated writers for similar performances of similar compositions.

   (ii)  In the case of a Work composed by you with one or more cowriters, the sum payable to you hereunder shall be a pro rata share, determined on the basis of the number of cowriters, unless you shall have transmitted to us a copy of an agreement between you and your cowriters providing for a different division of payment.

   (iii)  Monies received by us from any performing rights licensing organization outside of the United States, its territories and possessions, which are designated by such performing rights licensing organization as the author's share of foreign performance royalties earned by your Works after the deduction of our then current handling charge applicable to our affiliated writers and in accordance with our then current standard practices of payment for such performances.

 (b)  Notwithstanding the provisions of subparagraph 6(a), we shall have no obligation to make payment hereunder with respect to (i) any performance of a Work which occurs prior to the date on which we have received from you all of the information and material with respect to such Work which is referred to in paragraphs 2 and 3, or (ii) any performance of a Work as to which a direct license as described in subparagraph 5(c) has been granted by you, your cowriters, if any, or the publishers, or (iii) any performance for which no license fee shall be collected by us, or (iv) any performance of a Work which you claim was either omitted from or miscalculated on a royalty statement and for which we shall not have received written notice from you of such claimed omission or miscalculation within nine (9) months of the date of the royalty distribution seeking to be adjusted.

 7.  In accordance with our then current standard practices, we will furnish periodic statements to you during each year of the Period showing the monies due pursuant to subparagraph 6(a). Each such statement shall be accompanied by payment of the sum thereby shown to be due you, subject to all proper deductions, if any, for taxes, advances or amounts due BMI from you.

 8.  (a)  Nothing in this agreement requires us to continue to license the Works subsequent to the termination of this agreement. In the event that we continue to license your interest in any Work, however, we shall continue to make payments to you for such Work for so long as you do not make or purport to make directly or indirectly any grant of performing rights in such Work to any other licensing organization. The amounts of such payments shall be calculated pursuant to our then current standard practices upon the basis of the then current performance rates generally paid by us to our affiliated writers for similar performances of similar compositions. You agree to notify us by registered or certified mail of any grant or purported grant by you directly or indirectly of performing rights to any other performing rights organization within ten (10) days from the making of such grant or purported grant and if you fail so to inform us thereof and we make payments to you for any period after the making of any such grant or purported grant, you agree to repay to us all amounts so paid by us promptly with or without demand by us. In addition, if we inquire of you by registered or certified mail, addressed to your last known address, whether you have made any such grant or purported grant and you fail to confirm to us by registered or certified mail within thirty (30) days of the mailing of such inquiry that you have not made any such grant or purported grant, we may, from and after such date, discontinue making any payments to you.

 (b)  Our obligation to continue payment to you after the termination of this agreement for performances outside of the United States, its territories and possessions, of Works which BMI continues to license after such termination shall be dependent upon our receipt in the United States of payments designated by foreign performing rights organizations as your share of foreign performance royalties earned by your Works. Payment of such foreign royalties shall be subject to deduction of our then current handling charge applicable to our affiliated writers and shall be in accordance with our then current standard practices of payment for such performances.

9**.**  In the event that we have reason to believe that you will receive, are entitled to receive, or are receiving payment from a performing rights licensing organization other than BMI for or based on United States performances of one or more of your Works during a period when such Works were licensed by us pursuant to this agreement, we shall have the right to withhold payment for such performances from you until receipt of evidence satisfactory to us that you were not or

will not be so paid by such other organization. In the event that you were or will be so paid or do not supply such evidence within twelve (12) months from the date of our request therefor, we shall be under no obligation to make any payment to you for performances of such Works during such period.

    10. (a)  In the event that this agreement shall terminate at a time when, after crediting all earnings reflected by statements rendered to you prior to the effective date of such termination, there remains an unearned balance of advances paid to you by us or any other indebtedness owed to BMI by you, such termination shall not be effective until the close of the calendar quarterly period during which (i) you shall repay such unearned balance of advances or indebtedness, or (ii) you shall notify us by registered or certified mail that you have received a statement rendered by us at our normal accounting time showing that such unearned balance of advances or indebtedness has been fully recouped by us.

    (b)  The termination of this agreement shall be deemed subject to any rights or obligations existing between BMI and its licensees under licenses then in effect. As a result thereof, notwithstanding such termination, BMI shall have the right to continue to license all of your Works in all places and in all media with respect to which such licenses exist as of the date of termination, until such licenses expire.

    11.  Notwithstanding the termination of this agreement, all of the terms and conditions of this agreement shall continue to apply subsequent to such termination with respect to any Works which may continue to be licensed by BMI and any monies payable to you by BMI pursuant to the provisions of this agreement.

    12.  (a)  You warrant and represent that you have the right to enter into this agreement; that you are not bound by any prior commitments which conflict with your commitments hereunder; that each of the Works, composed by you alone or with one or more cowriters, is original; and that the exercise of the rights granted by you herein will not constitute an infringement of copyright or violation of any other right of, or unfair competition with, any person, firm or corporation. You agree to indemnify and hold harmless us, our licensees, the advertisers of our licensees and their respective agents, servants and employees from and against any and all loss or damage resulting from any claim of whatever nature arising from or in connection with the exercise of any of the rights granted by you in this agreement.

    (b)  Upon notification to us or any of the other parties herein indemnified of a claim with respect to any of the Works, we shall have the right to withhold payment of all sums which become due pursuant to this agreement or any modification thereof and/or to exclude such Work from this agreement until receipt of satisfactory written evidence that such claim has been withdrawn, settled or adjudicated.

    13. (a)  We shall have the right, upon written notice to you, to exclude from this agreement, at any time, any Work which in our opinion is similar to a previously existing composition and might constitute a copyright infringement, or has a title or music or lyric similar to that of a previously existing composition and might lead to a claim of unfair competition.

    (b)  In the case of Works which in our opinion are based on compositions in the public domain, we shall have the right, upon written notice to you, either (i) to exclude any such Work from this agreement, or (ii) to classify any such Work as entitled to receive only a fraction of the full credit that would otherwise be given for performances thereof.

    (c)  In the event that any Work is excluded from this agreement pursuant to subparagraph 12(b) or subparagraph 13 (a) or (b), all rights in such Work shall automatically revert to you ten (10) days after the date of our notice to you of such exclusion. In the event that a Work is classified for less than full credit under subparagraph 13 (b)(ii), you shall have the right, by giving notice to us, within ten (10) days after the date of our notice advising you of the credit allocated to the Work, to terminate our rights therein, and all rights in such Work shall thereupon revert to you.

14.  In each instance that you write, or are employed or commissioned by a motion picture producer to write, during the Period, all or part of the score of a motion picture intended primarily for exhibition in theaters, or by the producer of a musical show or revue for the legitimate stage to write, during the Period, all or part of the musical compositions contained therein, we agree, on request, to advise the producer of the film that such part of the score as is written by you may be performed as part of the exhibition of said film in theaters in the United States, its territories and possessions,

without compensation to us, or to the producer of the musical show or revue that your compositions embodied therein may be performed on the stage with living artists as part of such musical show or revue, without compensation to us. In the event that we notify you that we have established a system for the collection of royalties for performance of the scores of motion picture films in theaters in the United States, its territories and possessions, we shall no longer be obligated to take such action with respect to motion picture scores.

    15.  You make, constitute and appoint us, or our nominee, your true and lawful attorney, irrevocably during the Period, in our name or that of our nominee, or in your name, or otherwise, in our sole judgment, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process or pleadings that, in our sole judgment, may be necessary, proper or expedient to restrain infringement of and/or to enforce and protect the rights granted by you hereunder, and to recover damages in respect to or for the infringement or other violation of said rights, and in our sole judgment to join you and/or others in whose names the copyrights to any of the Works may stand; to discontinue, compromise or refer to arbitration, any such actions or proceedings or to make any other disposition of the disputes in relation to the Works, provided that any action or proceeding commenced by us pursuant to the provisions of this paragraph shall be at our sole expense and for our sole benefit. Notwithstanding the foregoing, nothing in this paragraph 15 requires us to take any proceeding or other action against any person, firm, partnership or other entity or any writer or publisher, whether or not affiliated with us, who you claim may be infringing your Works or otherwise violating the rights granted by you hereunder. In addition, you understand and agree that the licensing by us of any musical compositions which you claim may be infringing your Works or otherwise violating the rights granted by you hereunder, shall not constitute an infringement of your Works on our part.

    16.  BMI shall have the right, in its sole discretion, to terminate this agreement on at least thirty (30) days' notice by registered or certified mail if you, your agents, employees or representatives, directly or indirectly, solicit or accept payment from writers for composing music for lyrics or writing lyrics to music or for reviewing, publishing, promoting, recording or rendering other services connected with the exploitation of any composition, or permit use of your name or your affiliation with us in connection with any of the foregoing. In the event of such termination no payments shall be due to you pursuant to paragraph 8.

    17.  No monies due or to become due to you shall be assignable, whether by way of assignment, sale or power granted to an attorneyinfact, without our prior written consent. If any assignment of such monies is made by you without such prior written consent, no rights of any kind against us will be acquired by the assignee, purchaser or attorneyinfact.

    18.  In the event that during the Period (a) mail addressed to you at the last address furnished by you pursuant to paragraph 22 shall be returned by the post office, or (b) monies shall not have been earned by you pursuant to paragraph 6 for a period of two consecutive years or more, or (c) you shall die, BMI shall have the right to terminate this agreement on at least thirty (30) days' notice by registered or certified mail, electronic mail ("e-mail") or facsimile number addressed to the last postal or electronic address or transmitted to the last facsimile number furnished by you pursuant to paragraph 22 and, in the case of your death, to the representative of your estate, if known to BMI. If you failed to maintain a current address with BMI and BMI has made reasonable good-faith efforts in attempting to locate you without success, BMI shall have the right to terminate this agreement pursuant to this paragraph by regular first-class U.S. mail, in lieu of the means otherwise specified. In the event of such termination no payments shall be due to you pursuant to paragraph 8.

    19.  You acknowledge that the rights obtained by you pursuant to this agreement constitute rights to payment of money and that during the Period we shall hold title to the performing rights granted to us hereunder. In the event that during the Period you shall file a petition in bankruptcy, such a petition shall be filed against you, you shall make an assignment for the benefit of creditors, you shall consent to the appointment of a receiver or trustee for all or part of your property, or you shall institute or shall have instituted against you any other insolvency proceeding under the United States bankruptcy laws or any other applicable law, we shall retain title to the performing rights in all Works the rights to which are granted to us hereunder and shall subrogate your trustee in bankruptcy or receiver and any subsequent purchasers from them to your right to payment of money for said Works in accordance with the terms and conditions of this agreement.

20. (a)  You hereby authorize us to negotiate for and collect royalties or monies to which you may become entitled as a writer pursuant to the Audio Home Recording Act of 1992 and/or any amendments thereto or substitutions therefor and, to the extent possible, collect for and distribute to you royalties arising from or as compensation for home recording in countries outside the United States, its territories and possessions. This authorization with respect to royalties and monies under the Audio Home Recording Act of 1992 may be revoked by you at the end of any calendar year on prior written notice by you to us by registered or certified mail. Such revocation shall be effective beginning with the calendar year subsequent to the time of notice and shall in no way affect the Period of this agreement with respect to any of the other rights granted to BMI by you hereunder.

(b)  We agree to distribute to you royalties and monies collected by us pursuant to the authorization granted in subparagraph 20(a), pursuant to our then prevailing practices, including deduction of our expenses therefor.

21.  All disputes of any kind, nature or description arising in connection with the terms and conditions of this agreement shall be submitted to the American Arbitration Association in New York, New York, for arbitration under its then prevailing rules, the arbitrator(s) to be selected as follows: Each of us shall, by written notice to the other, have the right to appoint one arbitrator. If, within ten (10) days following the giving of such notice by one of us, the other shall not, by written notice, appoint another arbitrator, the first arbitrator shall be the sole arbitrator. If two arbitrators are so appointed, they shall appoint a third arbitrator. If ten (10) days elapse after the appointment of the second arbitrator and the two arbitrators are unable to agree upon the third arbitrator, then either of us may, in writing, request the American Arbitration Association to appoint the third arbitrator. The award made in the arbitration shall be binding and conclusive on both of us and shall include the fixing of the costs, expenses and reasonable attorneys' fees of arbitration, which shall be borne by the unsuccessful party. Judgment may be entered in New York State Supreme Court or any other court having jurisdiction.

22.  You agree to notify our Department of Writer/Publisher Administration promptly in writing of any change in your postal or electronic ("e-mail") address, or facsimile number.  Any notice sent to you pursuant to the terms of this agreement shall be valid if addressed to you at the last postal or electronic address or facsimile number so furnished by you.

23.  This agreement shall be subject to BMI's standard practices and procedures which are in effect as of the effective date of this agreement and as they may be modified and/or supplemented from time to time.

24.  You acknowledge that the relationship between you and us which is created by this agreement is one of ordinary contracting parties and is not intended to be a fiduciary relationship with respect to any of the rights or obligations hereunder.

25.  You authorize the inclusion of your name, likeness and biographical information in publicly distributed material relating to your association with us.

26.  This agreement constitutes the entire agreement between you and us, cannot be changed except in a writing signed by you and us and shall be governed and construed pursuant to the laws of the State of New York.

27.  In the event that any part or parts of this agreement are found to be void by a court of competent jurisdiction, the remaining part or parts shall nevertheless be binding with the same force and effect as if the void part or parts were deleted from this agreement.

28.  Any prior agreements, as modified, between you and us are canceled and superseded as of the effective date of this agreement.  All works that were embraced by any prior agreement between you and us and in which no other licensing organization controls your performing right interest shall be deemed embraced by this agreement. Any unearned balance of advances previously paid to you by us or unpaid indebtedness owed to us by you shall be deemed to be recoupable by us from any monies which become payable to you pursuant to this agreement and any extensions, renewals or modifications.

Very truly yours,

BROADCAST MUSIC, INC
(SEE NEXT PAGE FOR SIGNATURE OF BMI).

---

ACCEPTED AND AGREED TO:

**Denise Marie Jones**
**B357DB3BC9FBA3E17DC5D2E1273F5BA513D1074C**
(Digital Signature of Affiliate/Certificate Thumbprint)


**Denise Marie Jones**
(Name of Affiliate)

---

AGREEMENT DATED    **November 02, 2019**

BETWEEN BMI AND    **Denise Marie Jones**

---

BROADCAST MUSIC, INC.

**Charlie Feldman**
**6FD241B22E17B455FD23A457FC80EDB9128A520F**
(Digital Signature of BMI Vice President/Certificate Thumbprint)

**Charlie Feldman**
Vice President

---

BMI ACCOUNT #