UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DENISE JONES** | |
| **Plaintiff,** | |
| **-against-** | |
| **ATLANTIC RECORDS, WARNER MUSIC GROUP, 1501 CERTIFIED ENTERTAINMENT, 300 ENTERTAINMENT, MEGAN J. PETE, JORDEN THORPE, BELCALIS MARLENIS ALMANZAR, CRAIG KALEMAN, STEPHEN COOPER, CARL CRAWFORD, and KEVIN LILES,** | **22-CV-893 (ALC)** **OPINION AND ORDER[1]** |
| **Defendants.** | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Denise Jones, proceeding *pro se*, brings this action against Defendants Atlantic Recording Corporation ("Atlantic"), Warner Music Group Corp. ("Warner Music"), 1501 Certified Entertainment ("1501 Certified"), 300 Entertainment LLC ("300 Entertainment")[2], Megan J. Pete, Jorden Thorpe, Belcalis Marlenis Almanzar, Craig Kallman, Stephen Cooper, Carl Crawford and Kevin Liles for copyright infringement of lyrics from her original song, *Grab Em by the P\*\*\*\** ("*GEBTP*"), by Defendants' songs, *WAP* and *Thot Shit*. Defendants move to dismiss Plaintiff's Complaint pursuant to Rule 8(a), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court finds that Plaintiff's Complaint fails to state

---

[1] The substance of Plaintiff's lawsuit requires the Court to evaluate explicit words and subjects that may be considered offensive or derogatory.

[2] For the avoidance of doubt, the Court will refer to the various defendants by their legal names as stated in Defendants' memorandum of law. (*See* ECF No. 125 at 1.)

a claim of copyright infringement as a matter of law.  Defendants' motions to dismiss are **GRANTED**.

## FACTUAL BACKGROUND

When determining whether to dismiss a case, the court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011).  The following facts alleged in the Complaint are thus assumed to be true for the purposes of this motion.

Plaintiff is an independent artist performing under the name "Necey X".  (Compl., ECF No. 2-1 ¶¶ 13, 14, 16).  Plaintiff alleges that at one time she partnered with Mathew Thorpe, a non-party, on "an independent living company that provides housing and wrap-around service to adults."  (*Id.* ¶ 10.)  Mathew Thorpe is allegedly Defendant Thorpe's father.[3]  (*Id.*)  This partnership dissolved because Thorpe "couldn't hold up his end of the contract", and the dispute was eventually resolved in Plaintiff's favor in court.  (*Id.*)  Plaintiff alleges that this dispute served as the motive for Defendants to retaliate against her by infringing on her copyrighted works.  (*Id.*)

On December 8, 2019, Plaintiff created her song, *GEBTP*, which she describes as follows:

> It was created in a mild provocative manner to grasp the attention of the fans but the music had a message to the women in the word. G[E]BTP was created to encourage women to get inside the system and make a change. It's art so it was created in a way to appeal to everyone. The [persona] of the artist is wild, sexy, rebellious, and political. The song was inspired by the saying by Trump so the song was designed to talk about the wild side of politics. The creative work shines light to women like Monica Lewinsky, Maryln Monroe, and Kim kardashian. Women who were in politics and sexualized but played a major role in the changes rather good or bad.

(*Id.* ¶ 11.)

---

[3] Defendants assert that Mathew Thorpe is not Defendant Thorpe's father, and that Defendant Thorpe does not know this individual (ECF No. 125 at 5 n.5); however, as required for the purposes this motion, the Court will accept Plaintiff's factual assertion as true.

Defendant Pete is a rap artist who performs as "Megan Thee Stallion".  (Compl. ¶ 9.) Defendant Almanzar is also a rap artist who performs as "Cardi B".  (*Id.* ¶ 12.)  Defendant Thorpe is a rapper and songwriter who also goes by "Pardison Fontaine".  (*Id.* ¶ 9.)  Together, on August 25, 2020,  Pete, Almanzar, and Thorpe  collaborated on the hit song *WAP* (i.e., "Wet A** P****"). Thorpe and Pete also collaborated on the song *Thot Shit*.  (*Id.* ¶ 12.)

Plaintiff does not allege that *WAP* and *Thot Shit* sound like *GEBTP*.  Rather, she alleges that in creating the lyrics for *WAP*, "[t]hey cop[ied] and paste[d] [her] lyrics", although she admits that they "sometimes [used] different slang terms([that] only the community/culture could interpret)that mean the same thing."  (*Id.* ¶ 12.)  Plaintiff alleges that they knew "[she] had published the works on BMI and ASCAP so they took the parts they really liked and displayed it on a larger scale due to financial advantages."  (*Id.*)  Specifically, Plaintiff alleges that Defendants took the lyrics "p**** so wet I got that n**** wild'n, p**** so wet got that n**** wild'n" from *GEBTP* to create "it's that WAP WAP it's some wet *ss p****".  (*Id.*)  Plaintiff also alleges that the second portion of the lyric, "I got that n**** wild'n", was copied to create "why you in the club with n****s wild'n[?]"in *Thot Shit:*  (*Id.* ¶¶ 12, 15.)  Plaintiff alleges that at least fourteen other lines were directly copied from three of her songs and used in *Thot Shit* (Compl. ¶ 15), although she does not specify the names of those songs or the specific lyrics in the Complaint.

Plaintiff also alleges that Defendants mocked, stalked, and harassed her in various ways. For instance, Plaintiff alleges that she derived her nickname "Necey X" from the character Nisi, played by Halle Berry in the film *BAPS*.  (*Id.* ¶ 13.)  *WAP* was "inspired by *BAPS*, which Plaintiff believes was done on purpose by the "record label and their employees […] to word play on Necey X name to let [Plaintiff] know that they are bullying her and taking her style."  (*Id.*)  She explains that in the music video for *WAP*, Defendants used her "trademark hairstyle and expression to copy,

annoy, and mock" her.  (*Id.* ¶ 13.)  Additionally, Plaintiff maintains that she was stalked via her social media, which Defendants used to further mine her content for their own works.  (*Id.* ¶¶ 14, 23.)  She also makes allegations about other individuals' conduct towards her, who are not named as Defendants, such as Crystal Woodfoord, her former stylist who "posed as [her] best friend" and "scam[med]" her and Digital X records who allegedly produced a video detailing how Plaintiff and other artists had been "sacrificed so they can steal their content."  (*Id.* ¶ 21.)

## PROCEDURAL HISTORY

Plaintiff initiated this action on February 2, 2022.  (Compl., ECF No. 2-1.)  The summonses and complaint were served on Defendants 300 Entertainment, Kallman, Cooper, Liles, Atlantic, Warner Music on May 5, 2022.  (ECF Nos. 17–22.)  Defendants 1501 Entertainment and Crawford (collectively, the "Crawford Defendants") were purportedly served June 30, 2022.  (ECF No. 40.)

On February 22, 2022, Plaintiff filed a motion asking the Court to "[i]ssue a subpoena to all defendants to authorize and order the service providers to expeditiously disclose to the copyright owner or court's information sufficient to identify the alleged infringers to the extent such information is available to the service providers.  The identity of Megan J Pete, Pardison Fontaine (Jorden Thorpe), and Becalis Marlenis Almanzar."  (ECF No. 13.)  The Court denied this motion without prejudice to renewal.  (ECF No. 16.)  Defendants Pete, Thorpe and Almanzar have not yet been served with the summons and complaint because Plaintiff did not provide an address for service.  *Jones v. Atl. Recs.*, No. 22-CV-0893 (ALC), 2022 WL 769214, at *1 (S.D.N.Y. Feb. 18, 2022).

Defendants Atlantic, Warner Music, 300 Entertainment, Kallman, Cooper and Liles (collectively, the "Atlantic Defendants") filed a motion to dismiss the Complaint on November 1, 2022, arguing that it fails to state a claim of copyright infringement and that Liles, Kallman,

Cooper and 300 Entertainment were not properly served.  (ECF No. 124.)  The Crawford Defendants also filed a motion to dismiss, joining in the same arguments made by the Atlantic Defendants.  (ECF No. 130.)  Plaintiff filed a memorandum in opposition to the motions on November 23, 2022, which also attaches additional information and exhibits for the Court's consideration.  (ECF No. 135.)[4]  Defendants filed further memorandum in support of their motions on December 13, 2022.  (ECF Nos. 136, 137.)

## LEGAL STANDARD

On a Rule 12(b)(6) motion, the court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'"  *Selevan v. New York Thruway Auth*., 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Allegations that are "no more than conclusions[ ] are not entitled to the assumption of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" or "the defendant-unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678–79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 557 (2007)).  Nor must a court accept as true "legal conclusions" or "a legal conclusion couched as a factual allegation." *Id*.

Additionally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal citations and quotation marks omitted).  In particular, "the pleadings of a *pro se* plaintiff

---

[4] As part of her opposition to the motion to dismiss, Plaintiff asks the Court to reconsider its Order denying Plaintiff leave to file a motion for default judgment.  (ECF No. 135 1.)  This motion is **denied** for the substantially the same reasons set forth in the Court's October 4, 2022 Order.  (*See* ECF No. 123.)

must be read liberally and should be interpreted to raise the strongest arguments that they suggest."

*Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)) (internal quotation marks omitted).

## DISCUSSION

### I.  Copyright Infringement

Defendants argue that Plaintiff has not adequately alleged a claim of copyright infringement because: (1) she does not allege that Defendants had access to *GEBTP*; (2) Plaintiff does not allege that there is "substantial similarity" between her lyrics and Defendants' lyrics; (3) Plaintiff's lyrics constitute short, unoriginal phrases over which Plaintiff cannot assert copyright infringement and (4) Plaintiff does not allege specific facts against the individual defendants.  (ECF No. 125 at 8–16.)  As outlined below, the Court finds that the Complaint does not state a claim of copyright infringement of Plaintiff's lyrics: "p**** so wet got that n**** wild'n, p**** so wet got that n**** wild'n".

The Copyright Act provides the owner of a copyrighted work with "the exclusive right to…reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106).  To prevail on a claim for copyright infringement, the plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 439 (S.D.N.Y. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)), *aff'd sub nom. Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012)).

For the purposes of this motion to dismiss, Defendants do not contest that Plaintiff owns a valid copyright for *GEBTP*.  (ECF No. 125 at 8 n.8.)  To prove the second element of a copyright

claim, a plaintiff must show that the defendant "actually copied [their] work, and that such copying was illegal because a 'substantial similarity' exists between the allegedly infringing work…and the protectable elements of the copyrighted work[.]" *Porto v. Guirgis*, 659 F. Supp. 2d 597, 608 (S.D.N.Y. 2009) (citing *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)).

A. <u>Access</u>

Plaintiff must show that Defendants "actually copied" her work. *See Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d at 206. "Actual copying can be shown through either (1) direct evidence of copying or (2) circumstantial evidence that the defendants had access to the plaintiff's work." *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 327–28 (S.D.N.Y. 2021) (citing *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)). Here, because Plaintiff has not alleged direct evidence of copying, she must allege circumstantial evidence of copying through either (1) "a particular chain of events…by which the defendant might have gained access to the work," …. or (2) facts showing "that plaintiff's work was 'widely disseminated," such that access can be inferred." *Id.* (citing *Tomasini v. Walt Disney Co.*, 84 F. Supp. 2d 516, 519 (S.D.N.Y. 2000) (internal citation omitted) *and* (*Webb v. Stallone*, 910 F. Supp. 2d 681, 686 (S.D.N.Y. 2012)).

Here, Plaintiff alleges that her ex-business partner, Mathew Thorpe (allegedly Defendant Thorpe's father), was motived to retaliate against her after a court sided with Plaintiff in a dispute involving their independent living business. (Compl. ¶ 9.) She also alleges that Defendants knew that *GEBTP* was published on BMI and ASCAP. (*Id.* ¶ 12.)

The Court finds that Plaintiff has not adequately alleged access. As an initial matter, the circumstantial alleged connection between Thorpe and Plaintiff's ex-business partner does not meet the threshold to plausibly allege that Matthew Thorpe was familiar with Plaintiff's music and shared it with Defendants, especially when the Plaintiff's independent living business seemingly

bears no connection to her musical career.  Nor does Plaintiff allege facts suggesting that *GEBTP* was widely disseminated.  She merely alleges, in conclusory fashion, that Defendants were aware that *GEBTP* was published on BMI and ASCAP.

On the other hand, the Court notes that Plaintiff embedded a link to *GEBTP* on Spotify in her opposition to the motion to dismiss, arguing that her songs are "available all over the world on all streaming platforms such as iTunes, Spotify, Apple Music, Tidal, and basically every streaming platform and record store there is available digitally."  (ECF No. 125 at 3.)  However, even if the Court were to consider these additional, un-pled factual assertions, Plaintiff has not alleged when *GEBTP* was made available on these various streaming websites, so it is unclear from the pleadings whether *GEBTP* was available in Spotify or other streaming platforms prior to Defendants' release of *WAP* and *Thot Shit*.

Even if the Court were to credit these un-pled assertions, for the reasons set forth below, dismissal of Plaintiff's claims is warranted because the Court finds that Plaintiff's lyrics are not protectible as a matter of law and are not substantially similar to Defendants' lyrics.

B. <u>Originality</u>

The Court finds that the short phrases over which Plaintiff seeks copyright protection are not protectable as a matter of law.  "To qualify for copyright protection, a work must be original to the author." *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 206 (S.D.N.Y. 2019) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)).  "Because songwriters must be free to borrow sayings and expressions from popular culture, the Second Circuit and courts in this district have found that short and commonplace phrases are not protectable, even when used as the title or repeated lyrics of a song…." *Pickett*, 420 F. Supp. 3d at 207 (collecting cases).

The lyrics over which Plaintiff asserts copyright protection are no more than common phrases, employed frequently in popular culture and other Hip-Hop songs.  The concept of using "p**** so wet" as a rhetorical device in a song is neither original nor unique to Plaintiff, and, in any event, "[c]opyright does not protect ideas or themes."  *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 332 (S.D.N.Y. 2021) (citing *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996)).  Indeed, Defendants have cited at least three examples of works pre-dating *GEBTP* which use similar lyrics.  (ECF No. 125 at 14.) [5]  Likewise, Defendants have provided examples of at least three songs pre-dating *GEBTP* which use some variation of the phrase "n****s wild'n".  (*Id.* at 15.)  Where the only similarity between two works is not original to the author, a plaintiff's work is not protected by copyright, and thus is subject to dismissal.  *See Pickett*, 420 F. Supp. 3d at 208; *see also Sadhu Singh Hamdad Tr. v. Ajit Newspaper Advert.*, *Mktg. & Commc'ns, Inc.*, 503 F. Supp. 2d 577, 588 (E.D.N.Y. 2007) ("For plaintiff to establish a copyright infringement action, copyright originality and creativity are required.")

C.  Substantial Similarity

The Court also finds the Complaint fails to state a claim of copyright infringement because the lyrics at issue are not substantially similar.  "The basic tenet of a copyright infringement claim is plaintiff's allegation that a defendant's work or product is 'substantially similar' to his or her own protected work."  *OMG Accessories LLC v. Mystic Apparel LLC*, No. 19-CV-11589 (ALC)(RWL), 2021 WL 1167528, at *3 (S.D.N.Y. Mar. 25, 2021) (quoting *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010)).  "District courts in this

---

[5] The Court may take judicial notice of these lyrics because "they can be obtained from widely available and reliable sources, the accuracy of which cannot reasonably be questioned."  *Pickett*, 420 F. Supp. 3d at 207 (S.D.N.Y. 2019) (citing Fed. R. Evid. 201(b)).  Plaintiff has not contested the accuracy of these lyrics, or even addressed them in her opposition to the motions to dismiss.

circuit may evaluate a question of substantial similarity at the motion to dismiss stage under Rule 12(b)(6)." *Pickett*, 420 F. Supp. 3d at 206 (quoting *Peter F. Gaito*, 602 F.3d at 64 (2d Cir. 2010)). "When evaluating substantial similarity on a motion to dismiss, 'no discovery or fact-finding is typically necessary, because what is required is only a visual [or aural] comparison of the works.'" *McDonald v. West*, 138 F. Supp. 3d 448, 454 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) (quoting *Peter F. Gaito*, 602 F.3d at 64).   To determine whether two works are substantially similar, the court looks to "whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Peter F. Gaito*, 602 F.3d at 66 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)). In other words, the court examines "whether 'an average lay [listener] would recognize the alleged copy as having been appropriated from the copyrighted work.'"   *Id.* (internal citations and quotations omitted).   Additionally, "[t]wo works are not substantially similar as a matter of law if the similarity between two works concerns only non-copyrightable elements of the plaintiff's work…." *Pickett*, 420 F. Supp. 3d at 206.

Plaintiff's lyrics and Defendants' lyrics are different.  The lyrics "got that n***a wild'n" and "why you in the club with n****s wild'n"[6] are not substantially similar.  Although both phrases contain the words "n****" and "wild'n", Plaintiff uses the singular form, while Defendants make use of the plural.  Indeed, the phrase is actually used in two separate and distinct contexts.  Defendants' lyric, "why you in the club with n****s wild'n", poses a question to the rapper (or to the audience), while Plaintiff's lyric refers to the rapper's effect on a single individual.

---

[6] According to Defendants' declaration, the actual lyric in *Thot Shit* appears to be "Why the f*ck you in the club when n****s wildin'?"  (ECF No. 127-6 at 1.)  The Court finds that its analysis with respect to substantial similarity is the same when either applied to the lyrics as alleged by Plaintiff or the lyrics according to Defendants.

Thus, the phrase is used in different ways and has different meanings such that an ordinary listener would not identify Defendants' lyric as being appropriated from Plaintiff's song.  Likewise, Defendants' *WAP* lyrics are not substantially similar to Plaintiff's lyrics from *GEBTP*.  While Plaintiff repeats the lyric "p**** so wet, got that n***a wilding" twice at the end of her second verse, *WAP* repeats a different lyric, "wet *ss p****'", throughout the song as its hook.  (*Compare* ECF No. 127-2 at 2 *with* ECF No. 127-3 at  1–5.)  The lyrics do not share the same pattern of words, nor are they repeated throughout their respective songs in the same manner.  Again, a listener would not identify Defendants' lyrics as having been appropriated from Plaintiff.

D.  <u>Un-Pled Lyrics</u>

Finally, the Court also finds that Plaintiff has not alleged a valid copyright claim over the additional, un-pled lyrics appended to her opposition to the motions to dismiss.  Although the Court need not review un-pled new factual assertions contained in an opposition to a motion to dismiss, *see Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 585 (S.D.N.Y. 2022), in light of Plaintiff's *pro se* status, the Court will also review additional allegedly infringing statements since Defendants had an opportunity to respond to these allegations in their reply.

Plaintiff alleges that the following lyrics also constitute copyright infringement:

| Lyric No. | Plaintiff's Lyrics | Defendants' Lyrics |
|---|---|---|
| 1. | *Bag* (Jan. 8, 2020)  "why she so savage b**** they had me gated in northview" | *Savage* (Mar. 6, 2020)  "ratchet Bouji bad" |
| 2. | *F THE POLICE* (Feb. 19, 2019)  (Remix of the song *Boys in the Hood*) | *Girls in the Hood* (Jun. 26, 2020) |
| 3. | *BAG SONG* (Aug. 30, 2019)  "I'm a vet with this shit all I know is eating dinner" | *Don't Stop* (Oct. 2, 2020)  "Real n****s love me from the H to the D" |

| | | |
|---|---|---|
| | "from east or west coast all the bosses fuck with me" | |
| 4. | *Rich Chick Shit* (Jul, 1, 2020)<br><br>"Either sign the disclosure or do not get in the party, killers all around me man I'm not just anybody" | *Body* (Nov. 20, 2020)<br><br>"Body ody ody"<br><br>"Rule number 1 if we link up on a real sneak tip rule number 1 don't you repeat that shhhh" |
| 5. | *Money in Hand* (Jan. 1, 2020)<br><br>"Don't make me get in my bag"<br><br>"I get straight to the bag put the money in my hand. Every time I make the right they wanna bang the left" | Untitled<br><br>"I be in my bag but I be in his b[a]g too" |
| 6. | *Left Right* (Sep. 2018) | *Simon Says* (May 17, 2019)<br><br>"Left right left right left" |
| 7. | *GEBTP*<br><br>"Got a little whiskey and I'm talking M Lewinsky" | *Thot Shit*<br><br>"when the liquor hit a b**** get toxic"<br><br>"drinking out the mtf bottle on my Thot Shit" |
| 8. | *GEBTP*<br><br>"no missionary n***a hit it doggy style" | *Thot Shit*<br><br>"missionary or doggy style, ima top sh*t" |
| 9. | *Rich Chick Shit* (Jul. 1, 2020)<br><br>"N***a I'm the sh*t, don't give a f who talk about me" | *Thot Shit*<br><br>"Don't give a f who talk behind my back , I don't gaf about a broad tryna bash me, I'm the shit" |
| 10. | *GEBTP* (Jan. 8, 2020)<br><br>"Don't come approaching unless you coming talking about them thousands" | *Thot Shit*<br><br>"We ain't even speaking [i]f a n***a ain't spending" |
| 11. | *On You* (Jul. 16, 2020)<br><br>"vvs all on my necklace n***a what's on you " | *Thot Shit*<br><br>"Love it when a n**** got a mouth full of vvs"<br><br>"my chain ain't hitting if a b**** ain't hurting lol" |

| 12. | *BAG* (Aug. 2019) | *Thot Shit* |
| | | |
| | "Ima vet with this shit all I know is eating dinner" | "Ima snake I got a lot of venom, since these h**s all rat all I see is a whole lotta dinner" |
| 13. | *Rich Chick Shit* (Jul 1, 2020) | *Thot Shit* |
| | | |
| | "I'm a bossy a** chick I like that sloppy toppie you can just give me some head I ain't tryna catch a body" | "Booked but I squeeze a little head in my calendar" |
| 14. | *GEBTP* | *WAP* |
| | | |
| | "I could make him eat it while he do donuts when it's time for court nobody show up" | "put this p***y in ya face swipe ya nose like a credit card" |
| | | |
| | | "Hop on top I wanna ride" |
| | | |
| | | "your honor ima freak b**** hand cuffs leashes" |

(ECF No. 135 at 10–13.)

Besides the fact that Plaintiff has not alleged that she has registered a valid copyright over these additional works, as with Plaintiff's other lyrics, she cannot assert copyright protection over short, common phrases or words.  The vast majority of these lyrics only share one or two words in common.  For instance, Lyrics No. 1 share the word "savage", Lyrics No. 5 share the word "bag", Lyrics No. 6 share the words "left" and "right", Lyrics No. 8 share the words "missionary" and "doggy style", Lyrics 11 share the acronym "vvs"[7], and Lyrics No. 13 share the word "head".  These words are common in popular culture and frequently used in Hip Hop.  (*See, e.g.,* ECF No. 137 at 6 and 8 n.9.)  And such commonplace words are "far too brief, common, and unoriginal to create any exclusive right vested in Plaintiff."  *McDonald*, 138 F. Supp. 3d at 456 (S.D.N.Y. 2015).

---

[7] According to Urban Dictionary, "vvs" is an acronym that stands for "Very, very slight (inclusions)", which refers to the clarity and quality of a diamond. https://www.urbandictionary.com/define.php?term=VVS (last accessed August 7, 2023).

Nor can Plaintiff assert copyright protection over the phrase "in the hood", or the fact that both she and both Defendants released remixes of *Boyz-N-The-Hood*.  Plaintiff has not demonstrated any amount of creativity or originality in these common words and short phrases sufficient for a claim of copyright infringement.  *See Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992) (affirming district court's denial of copyright protection over "single words or short phrases which do not exhibit the minimal creativity required for copyright protection."); *see also Guity v. Santos*, No. 18-CV-10387 (PKC), 2019 WL 6619217, at *5 (S.D.N.Y. Dec. 5, 2019) ("The shared usage of single everyday words [] fails to show substantial similarity between [] two songs.")

The rest of the additional lyrics in Plaintiff's opposition suggest, at best, that Plaintiff and Defendants wrote lyrics about similar concepts.  For instance, Plaintiff claims that her lyrics "from east or west coast all the bosses f*ck with me" were infringed upon by Defendants' lyrics "real n****s love me from the H to the D".  While these lyrics might use a similar rhetorical device to demonstrate their respective rapper's wide geographical appeal, they are in fact different sentences which communicate similar, yet clearly distinct messages.  Likewise, Plaintiff also claims that her lyric "either sign the disclosure or do not get in the party, killers all around me man I'm not just anybody" was infringed upon by Defendants' lyric "Rule number 1 if we link up on a real sneak tip rule number 1 don't you repeat that shhhhh". (Lyric No. 4.)  Again, while both lyrics emphasize the importance of secrecy during encounters with their respective rappers, they are clearly different lyrics—their only commonality is that they communicate similar ideas about secrecy.  These themes and concepts are neither unique nor original to Plaintiff and are not protectible under copyright law.  *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 332 (S.D.N.Y. 2021) ("[c]opyright does not protect ideas or themes.")

14

## II.    Additional Causes of Action

Plaintiff's complaint suggests that she is also asserting claims for criminal copyright violations and for stalking and harassment.[8] (Compl. at 2, ¶¶ 4, 8.)  First, it is undisputed that there is no private right of action for a plaintiff to enforce a criminal copyright violation.  *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 39 (S.D.N.Y. Nov. 16, 1992) *aff'd*, 23 F.3d 398 (2d Cir.1994).

Second, Plaintiff's allegations regarding for stalking and harassment, broadly construed as a claim for intentional or negligent inflection of emotional distress under New York law, are insufficient.  For intentional infliction of emotional distress under New York law, a plaintiff must allege "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Anthony v. GE Cap. Retail Bank*, No. 14-CV-2809 (ALC)(HBP), 2015 WL 10846141, at *4 (S.D.N.Y. Sept. 30, 2015) (citing *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*

Here, Plaintiff alleges, in conclusory fashion, that Defendants "[stalked] [Plaintiff's] social media via. Instagram and Facebook to gather content and information to use in the videos as scare tactics."  (Compl. ¶ 14.)  Plaintiff also claims that she was "alarmed" when Defendant Pete announced that she intended to start her own independent living business knowing that Plaintiff had previously had her own independent living business, and that Pete "was trolling and bullying her the whole time…."  (Compl. ¶¶ 16–17.)  After Plaintiff allegedly publicized Defendants' alleged copyright infringement via social media, Defendants "heightened the harassment by using

---

[8] The Court has diversity jurisdiction over these claims.

other major artists in the label and affiliates to troll and copy all the content that NeceyX released to cause substantial emotional distress, suffering, anguish, humiliation and fear of being singled out of the music industry." (Compl. ¶ 18.)  She also alleges that she was caused emotional distress when she realized that Defendants had named *WAP* after *BAPS*—the inspiration for her rap name—and that in the music video for *WAP* Defendants copied her "trademark hairstyle and expression to copy, annoy, and mock" her.  (Compl. ¶ 13.)

These conclusory and unspecific allegations are insufficient to allege intentional infliction of emotional distress.   "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Goolden v. Wardak*, No. 19-CV-6257 (JPO), 2020 WL 4271695, at *5 (S.D.N.Y. July 23, 2020) (citing *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996).  "The conduct in question must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal citations and quotations omitted).

At base, Plaintiff alleges that she believes Defendants stalked and harassed her by continuing to mine her social media and music for more content to use for Defendants' songs. "[K]nowing and purposeful copyright infringement…does not rise to the level of 'extreme and outrageous' that New York courts contemplate to sustain an intentional […] infliction of emotional distress claim."  *Kelley v. Universal Music Grp.*, No. 14 CV-2968 (PAE), 2016 WL 5720766, at *10 n.21 (S.D.N.Y. Sept. 29, 2016) (citing *Harley v. Nesby*, No. 08 Civ. 5791 (KBF), 2012 WL 1538434, at *5 (S.D.N.Y. Apr. 30, 2012)).  Plaintiff does not allege that Defendants used social media to threaten, verbally abuse, intimidate, or humiliate her, conduct which could rise to the level of intentional infliction of emotional distress.  *See Goolden*, 2020 WL 4271695, at *6.

Plaintiff's other allegations, that Defendants caused her emotional distress by naming *WAP* after *BAPS*, by copying her "trademark" hairstyle, and by Defendant Pete announcing she wanted to open a similar type of business as Plaintiff, also do not rise to the requisite "extreme and outrageous" behavior that could support an intentional infliction of emotional distress claim. *See Leontiev v. Varshavsky*, No. 16-CV-3595, 2016 WL 4939080, at *4 (S.D.N.Y. Sept. 2, 2016); *see also Triano v. Gannett Satellite Info. Network, Inc.*, No. 09-CV-2497 KMK, 2010 WL 3932334, at *6 (S.D.N.Y. Sept. 29, 2010) (noting that "[i]t is nearly impossible in New York for a plaintiff to state a viable claim for intentional infliction of emotional distress.") (internal citations omitted).

The Complaint also fails to state a claim of negligent infliction of emotional distress. For negligent infliction of emotional distress, a plaintiff may recover under either: "(1) the 'bystander theory' or (2) the 'direct duty theory.'" *Wahlstrom v. Metro-N. Commuter R.R.*, 89 F. Supp. 2d 506, 531 (S.D.N.Y. 2000). "The 'bystander theory' requires the plaintiff to allege that she has "witnessed the death or serious bodily injury of a member of her immediate family." *Sanderson v. Leg Apparel LLC*, No. 1:19-CV-08423-GHW, 2020 WL 3100256, at *12 (S.D.N.Y. June 11, 2020) (quoting *Wahlstrom*, 89 F. Supp. 2d at 531). As is more relevant to the facts here, "[t]he 'direct duty theory' requires a plaintiff to allege that she 'suffered an emotional injury from [a defendant's] breach of a duty which unreasonably endangered her own physical safety' or 'caused her to fear for her physical safety.'" *Id.* (internal citations omitted).

Because Plaintiff does not allege a direct duty owed by Defendants to Plaintiff, the allegations are insufficient to state a claim of negligent infliction of emotional distress under a direct duty theory. "The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). In her opposition to the motions to dismiss, Plaintiff makes generalized allegations about

fearing for her safety from alleged stalking and harassment by the "cartel" that she equates to the music industry at large (*see, e.g.*, ECF No. 135 at 7, 9), but Plaintiff neither identifies any negligent conduct on the part of Defendants or any special duty to avoid causing emotional distress.  In fact, Plaintiff does not allege any sort of relationship between herself and Defendants that could give rise to such a duty.  Accordingly, any claim for negligent infliction of emotional distress is also dismissed.  *See Sesto v. Slaine*, 171 F. Supp. 3d 194, 204 (S.D.N.Y. 2016) (dismissing a claim of negligent infliction of emotional distress where plaintiff has not "pointed to any type of negligent behavior recognized by New York courts as creating compensable emotional distress."); *see also Chau v. Donovan*, 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019); *see also Triano*, 2010 WL 3932334, at *7.

### III.    Leave to Amend

Generally, courts grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects; however, leave to amend is not required where it would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Here, granting Plaintiff leave to amend would be futile because "the finding of a lack of substantial similarity turns on the works themselves and not on the artfulness or sufficiency of the pleading." *Kaye v. Cartoon Network Inc.*, 297 F. Supp. 3d 362, 371 (S.D.N.Y. 2017).

A revised complaint could not cure the central deficiency in Plaintiff's Complaint— namely, that she cannot assert copyright protection over commonplace phrases and concepts and cannot show substantial similarity between her lyrics and Defendants' lyrics.  Thus, because amendment would be futile, the Complaint is dismissed with prejudice.  *See Dreamtitle Publ'g, LLC v. Penguin Random House LLC*, No. 1:22-CV-7500-GHW, 2023 WL 4350734, at *22 (S.D.N.Y. July 5, 2023) (dismissing a copyright infringement claim with prejudice where

amendment would be "inherently futile because the works are what they are.") *see also Joseph v. Buffalo News, Inc.*, 792 F. App'x 60, 64 (2d Cir. 2019) (affirming dismissal of a complaint for copyright infringement with prejudice where amendment was futile) (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive…it is not an abuse of discretion to deny leave to amend.")); *see also Kaye*, 297 F. Supp. 3d at 371 (dismissing a copyright infringement claim with prejudice where "[n]o revised pleading could cure the fundamental infirmity in Plaintiff's case" due to lack of substantial similarity between the works at issue).[9]

Amendment of Plaintiff's state law causes of action would also be futile.  Plaintiff has failed to plausibly allege claims of negligent or intentional infliction of emotional distress because she does not allege any "extreme or outrageous" conduct or that Defendants owed her a special or direct duty to avoid causing emotional distress.  *See Sandia v. Wal-Mart Stores, E. LP*, 699 F. App'x 64, 65 (2d Cir. 2017) (affirming dismissal of a claim for intentional infliction of emotional distress with prejudice where amendment was futile because plaintiff "failed to allege conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency to be regarded as atrocious, and utterly intolerable in a civilized society.") (internal citations and quotations omitted) (summary order).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss are **GRANTED** and the Complaint is **dismissed with prejudice** in its entirety.  The Clerk of Court is respectfully directed

---

[9] In light of the Court's ruling dismissing the Complaint with prejudice, the Court need not address Defendants' other arguments in favor of dismissal.

to terminate all pending motions, close this case, and mail a copy of this Opinion and Order to the

*pro se* Plaintiff.

**SO ORDERED.**

**Dated: August 29, 2023**
      **New York, New York**

_____
    **ANDREW L. CARTER, JR.**
    **United States District Judge**